826 So.2d 945 (2002)
DR. M. Hassen MOOSSUN, Petitioner,
v.
ORLANDO REGIONAL HEALTH CARE, et al., Respondents.
No. SC00-1472.
Supreme Court of Florida.
June 20, 2002.
Rehearing Denied September 11, 2002.
*946 Zahid H. Chaudhry, Tallahassee, FL, for Petitioner.
Richard L. Allen, and Brian L. Wagner of Mateer & Harbert, P.A., Francis E. Pierce, III and David B. Falstad of Gurney & Handley, P.A., and Thomas E. Dukes and Ruth Osborne of McEwan, Martinez, Luff, Dukes & Ruffier, Orlando, FL, for Respondents.
PER CURIAM.
We have for review Moossun v. Orlando Regional Health Care, 760 So.2d 193 (Fla. 5th DCA 2000), based on conflict with the decisions in Charyulu v. Mercy Hospital, Inc., 703 So.2d 1155 (Fla. 3d DCA 1997), Brown v. Meyers, 702 So.2d 646 (Fla. 4th DCA 1997), and Samuels v. Palm Beach Motor Cars Limited by Simpson, Inc., 618 So.2d 310 (Fla. 4th DCA 1993), on the issue of whether a trial court's order setting a case management conference constitutes sufficient "record activity" to preclude dismissal for failure to prosecute under Florida Rule of Civil Procedure 1.420(e) even though there has been no other record activity by the litigants in the case. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set out below, we hold that the order setting a case management conference in this case does not constitute sufficient record activity to preclude dismissal under rule 1.420(e).

PROCEEDINGS TO DATE
The relevant proceedings to date are set out in the opinion below:
The suit below arose out of the death of twenty-year-old Ameena Moossun ["Ameena"], who died from pneumonia at Sand Lake Hospital in 1994. Ameena had fallen ill while on vacation with her mother in Orlando and the record suggests that her condition was misdiagnosed. Suit was filed by Ameena's father, Dr. M. Hassen Moossun ["Dr. Moossun"], acting as personal representative of Ameena's estate.

*947 The case languished following the filing of the amended complaint on November 3, 1997, perhaps because shortly after the filing, plaintiffs out-of-town counsel filed a motion to withdraw. The last filing by a party appears to be a request to produce filed by Orlando Regional Healthcare System ["ORHC"] on January 27, 1998.
In the year following the filing of ORHC's request to produce, only two documents appear to have been filed in this action. On February 18, 1998, the court issued an order substituting new counsel to represent Dr. Moossun. Then, on January 26, 1999, the trial court issued an "Order Setting Case Management Conference."
Moossun, 760 So.2d at 193-94 (footnote omitted). The order directed the parties to submit a written status report and set a case management hearing to be attended by all parties on March 19, 1999. See id. at 194.[1] Two days later, on January 28, 1999, the defendants moved to dismiss the action for lack of prosecution, asserting that "[t]he last recorded activity in this case was the Request to Produce served in this action by Defendant, Orlando Regional Health Care System d/b/a Sand Lake Hospital, which was served on January 27, 1998." Id. On March 15, 1999, counsel for Dr. Moossun filed his status report on behalf of Ameena's estate, listing nonrecord activity that occurred in the case between February 18, 1998, and January 28, 1999. See id. at 195.[2]
*948 The trial court subsequently held a hearing, and thereafter entered an order dismissing the case for lack of prosecution on March 24, 1999. See id. According to the district court,
The order reviewed the activity set forth in counsel's letter of March 15, 1999, and concluded that none of the activity constituted "record activity" sufficient to preclude dismissal of the action. The court further concluded that the case management order entered by the court was insufficient to establish record activity. The court explained that "[t]he Case Management Order entered was only designed to determine the status of the case and to clear the court's docket of cases that have been concluded or abandoned."
Id. On appeal to the Fifth District Court of Appeal, Dr. Moossun argued that the trial court's order setting a case management conference constituted sufficient "record activity" to preclude dismissal for failure to prosecute. See id. In rejecting that argument and affirming the circuit court's decision, the district court relied on this Court's ruling in Toney v. Freeman, 600 So.2d 1099 (Fla.1992), wherein we held that a trial court's status order and a response to that order did not constitute sufficient "record activity" to preclude dismissal under rule 1.420(e). See Moossun, 760 So.2d at 196. In its opinion the district court acknowledged several district court decisions apparently to the contrary, Charyulu v. Mercy Hospital, Inc., 703 So.2d 1155 (Fla. 3d DCA 1997); Brown v. Meyers, 702 So.2d 646 (Fla. 4th DCA 1997); and Samuels v. Palm Beach Motor Cars Limited by Simpson, Inc., 618 So.2d 310 (Fla. 4th DCA 1993). See Moossun, 760 So.2d at 196-97.

ANALYSIS
Dr. Moossun asserts that an order setting a case management conference requiring a written report and attendance of the parties at a case management conference is designed to hasten the suit to judgment, and therefore constitutes "record activity" sufficient to preclude dismissal for failure to prosecute. For this reason, he argues, the district court's decision should not have relied on the principles announced in Toney in affirming the trial court's order of dismissal.
Rule 1.420(e), of the Florida Rules of Civil Procedure is entitled "Failure to Prosecute" and provides:
(e) Failure to Prosecute. All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 1 year shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a stipulation staying the action is approved by the court or a stay order has been filed or a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending. Mere inaction for a period of less than 1 year shall not be sufficient cause for dismissal for failure to prosecute.
*949 Fla. R. Civ. P. 1.420(e). This rule is intended to ensure that actions filed in Florida's courts are diligently prosecuted by the parties. The rule provides for dismissal without prejudice of actions wherein no record activity has taken place for a year.[3]
This Court construed rule 1.420(e) in Toney as it pertained to a court-ordered status request which required written responses detailing the status of an action. After responses were submitted and a hearing, the trial court dismissed the action due to lack of prosecution. On appeal, the district court reversed the dismissal, holding the status order and responses constituted record activity for purposes of rule 1.420(e). See Toney, 600 So.2d at 1100. Upon review, this Court held that the status request and responses did not constitute record activity under rule 1.420(e).
In our opinion in Toney, we explained that "not every action taken in a case is sufficient to prevent dismissal under the rule." Id. Under the rule "[r]ecord activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Id. Relying on two district court decisions which had held that a trial court's status request did not preclude dismissal,[4] we concluded that such court activity is not the type of activity contemplated by the rule to preclude dismissal in the face of an otherwise dormant record:
We find the opinions in Norflor Construction and Caldwell to be consistent with the principle that record activity must advance a case toward resolution. As Judge Downey noted in his dissenting opinion below, "[i]n a stretch of the imagination ... most any activity demonstrates there is life in the case and nudges it along. However, the ideal is to do something affirmative, something of substance." 591 So.2d at 202 (Downey, J., dissenting). Not every paper placed in the court file may be considered as record activity.
We also find this reasoning to be consistent with the spirit and purpose of the rule. Trial judges should be encouraged to take an active role in keeping themselves informed of the cases assigned to them. We refuse to construe appropriate case management activities in such a way as to give the parties leave to ignore the case for another year before dismissal is possible. Such a construction would thwart the purpose of case management and the purpose of the rule itself-to encourage prompt and efficient prosecution of cases and to clear court dockets of cases that have essentially been abandoned.
We reject Freeman's argument that the specific status order and response in this case constituted record activity because the order asked counsel to respond to questions designed to advance the case toward resolution and because Orkin's response, indicating the plaintiff had died, further advanced the case. The status order was designed to obtain information about the progress of the case; it did not move the case forward in the sense of a progression toward resolution. Although Orkin's response did mention that the plaintiff died, this response did not in and of itself advance the case in any way, but merely attempted to explain the delay in prosecution.
Toney, 600 So.2d at 1100-01 (emphasis added) (footnotes omitted). Hence, in Toney, *950 we rejected an argument almost identical to that asserted here.
The petitioner attempts to distinguish Toney and asserts that the primary issue in Toney was whether a status request was "record activity," whereas, here, the issue is whether a status conference constitutes record activity. He further asserts that although this Court in Toney mentioned "case management activities," we did not specifically address whether a case management conference constitutes record activity, and some district courts have used this fact to distinguish Toney.
Dr. Moossun cites Samuels v. Palm Beach Motor Cars Limited by Simpson, Inc., 618 So.2d 310 (Fla. 4th DCA 1993), and Miami Beach Awning Co. v. Heart of the City, Inc., 565 So.2d 739 (Fla. 3d DCA 1990). In Samuels the trial court ordered a status conference and when only the plaintiffs counsel appeared, the trial court entered a default judgment against the defendants. See Samuels, 618 So.2d at 310. After a later hearing contesting the entry of the default judgment, the trial court set aside the default and granted the defendants' motion to dismiss for lack of prosecution under rule 1.420(e). See id. On appeal, the Fourth District reversed, holding that the order setting a status conference, coupled with the attendance of one of the parties at the conference, was sufficient record activity to preclude dismissal under rule 1.420(e). See id. at 311. In its opinion, the district court distinguished Toney:

Toney is distinguishable from the instant case. Toney did not address the issue of whether an order setting a status conference, coupled by the attendance of one or both parties at such a conference constitutes record activity sufficient to preclude dismissal under rule 1.420(e). The third district addressed this very issue in Miami Beach Awning Co. v. Heart of the City, Inc., 565 So.2d 739 (Fla. 3d DCA 1990), holding that a trial court's order setting a cause for status conference, almost by definition, is reasonably calculated to advance the cause toward resolution, thus is sufficient to preclude dismissal for lack of prosecution. Id. at 739. In so holding, the court distinguished Norflor Construction Corp., supra. Id.

We agree with the distinction drawn in Miami Beach Awning Co. between a status order and a status conference. While responses to a status order such as the one entered in Toney are sought simply for the court's own information, the parties' attendance at a status conference can significantly advance a cause toward resolution, for example, by narrowing the issues to be tried or through exploration of settlement possibilities.
Samuels, 618 So.2d at 311. The Fourth District later relied on and followed its decision in Samuels in Brown v. Meyers, 702 So.2d 646, 646 (Fla. 4th DCA 1997).[5]
We cannot agree with Dr. Moossun's attempts to distinguish Toney, nor with the distinctions relied upon in Samuels or Miami Beach Awning. This Court in Toney enunciated a clear policy that "[t]rial judges should be encouraged to take an active role in keeping themselves informed of the cases assigned to them." 600 So.2d at 1100. For this reason, we "refuse[d] to construe appropriate case management activities in such a way as to give the parties *951 leave to ignore the case for another year before dismissal is possible." Id. (emphasis added). Our reference to "case management activities" clearly contemplated more than just a status report and would reasonably be construed to include status conferences. Both have the same purpose of requiring the parties to explain what is going on in the case.
The trial court's initiative in docket management, however, is no substitute for the parties' affirmative responsibility to prosecute the action in a timely manner. In short, and akin to our reasoning in Toney, allowing parties to avoid dismissal for another year because a court elects to hold a status conference would "thwart the purpose of case management and the purpose of the rule itselfto encourage prompt and efficient prosecution of cases and to clear court dockets of cases that have essentially been abandoned." Id. Accordingly, we find that this case is controlled by the reasoning of Toney.
We acknowledge that on the one hand, this case differs from Toney in that the court scheduled a hearing for the purpose of reviewing the status report. The trial court directed that the status report include information concerning any pending motions, discovery taken and expected, estimated time to bring action to trial, and whatever necessary action the parties recommended to be taken to move the case to completion. See Moossun, 760 So.2d at 194. However, based on our reasoning and logic in Toney, we find no reason to differentiate between a court-initiated status request and a status conference. Both essentially serve the same purpose and neither should be used as a vehicle to breathe life into a case not otherwise prosecuted by the parties for another year. Indeed, if taken to its extreme, such reasoning would allow cases to remain pending indefinitely based solely on a diligent trial court's annual call for a status report or conference.

CONCLUSION
For the above stated reasons, and consistent with our holding in Toney, we hold that the entry of a court order setting a case management conference does not constitute "record activity" sufficient to preclude dismissal for lack of prosecution under rule 1.420(e). Accordingly, we approve the decision below and disapprove the decisions in Miami Beach Awning and Samuels to the extent that they are inconsistent with this decision.
It is so ordered.
SHAW, HARDING, ANSTEAD, and PARIENTE, JJ., concur.
WELLS, C.J., concurs with an opinion.
LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.
WELLS, C.J., concurring.
I concur in the well-stated majority opinion affirming the district court's adherence to this Court's precedent in Toney v. Freeman, 600 So.2d 1099 (Fla.1992). I write to respond to the dissenting opinion's attempt to distinguish Toney. I conclude that Toney cannot be distinguished on the difference between an order directing a written status report and an order directing an oral status hearing when this Court's stated rationale in Toney is considered:
We also find this reasoning to be consistent with the spirit and purpose of the rule. Trial judges should be encouraged to take an active role in keeping themselves informed of the cases assigned to them. We refuse to construe appropriate case management activities in such a way as to give the parties leave to ignore the case for another year before *952 dismissal is possible. Such a construction would thwart the purpose of case management and the purpose of the rule itself-to encourage prompt and efficient prosecution of cases to clear court dockets of cases that have essentially been abandoned.
Id. at 1100.
Moreover, I specifically disagree with the dissent's assertion that this holding "furthers the cause of arbitrary efficiency at the expense of justice, and makes it possible for trial courts to ignore possibly meritorious cases." Dissenting op. at 954. This assertion ignores that there are citizens who, by the receipt of service of process, are made defendants to lawsuits in our courts, and these defendants have interests and matters at risk in being parties to these lawsuits. The defendants' interests must be protected and should be of equal concern to our courts as are the interests of those who, by paying a filing fee, become plaintiffs and have the power to have these defendants brought into court. It is a reality that being sued is costly to the party sued in money, emotion, time, and many other tangible and intangible ways. This is true even when the suit is totally meritless.
The long-in-place court rule which is here at issue, i.e., rule 1.420(e), simply recognizes that if a suit is not pursued by the party who has brought it, the court will not allow the suit to linger. This is so not only because unwarranted delay not only consumes scarce judicial resources, but because it unfairly burdens the defendant with the various kinds of costs of the process merely by a lawsuit's lingering presence. Justice is served to no one by allowing lawsuits to remain dormant.
Of course, it must be remembered that the dismissal under rule 1.420(e) is without prejudice. See Southeast Mrtg. Co. v. Sinclair, 632 So.2d 677, 678 (Fla. 2d DCA 1994). Thus, the lawsuit may be refiled unless the suit has previously been dismissed or the statute of limitations has run.
LEWIS, J., dissenting.
Because I conclude that the ordering of a status conference by a trial court constitutes record activity which advances a case toward resolution under Toney v. Freeman, 600 So.2d 1099 (Fla.1992), I must respectfully dissent. I cannot join the majority opinion, because, in my view, the petitioner's cause of action should be allowed to proceed. The trial court did not simply request a status report, but it ordered the parties to attend a status conference, and it is, therefore, clear that the situation addressed by the Court today is fundamentally different than the scenario before this Court in Toney.
Certainly, this Court used clear language when it enunciated the principle underlying the Toney decision: "Record activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Id. at 1100. In Toney, we held that a trial court's mere status request did not constitute adequate record activity to prevent dismissal for lack of prosecution. There are meaningful distinctions, however, between an order requesting an update on the status of a case and an order setting a case management conference. Simple logic dictates that a trial court-ordered status conference must qualify as record activity that results in "hasten[ing] the suit to judgment." As Judge Orfinger correctly noted in his dissenting opinion below, in this proceeding, "more is required than a mere status report." Moossun v. Orlando Regional Health Care, 760 So.2d 193, 197 (Fla. 5th DCA 2000) (Orfinger, Senior Judge, dissenting). The trial court's order required the respective parties to deliver *953 to the court not only a written status report, but to also attend and fully participate in a case management hearing. See id. at 194. This mandatory hearing certainly would have caused progression of Moosun's cause of action toward judgment. Therefore, while the facts of Toney and the instant action are dissimilar, the reasoning of Toney counsels against the dismissal of the petitioner's cause of action.
The majority's holding today is not, in my view, in accord with Florida law regarding the type of activity that is sufficient to preclude dismissal for failure to prosecute. A striking example of the inconsistency is this Court's decision in Fuster-Escalona v. Wisotsky, 781 So.2d 1063 (Fla.2000). In Fuster-Escalona, this Court held that the filing of a motion to disqualify the presiding trial judge was sufficient record activity to defeat a motion to dismiss for failure to prosecute. See id. at 1066. The plaintiff did not request a hearing on his motion, and unlike the instant case, the trial court did not schedule any proceedings. See id. In Fuster-Escalona, however, this Court allowed the plaintiff's cause of action to proceed, notwithstanding the mere filing of a motion without scheduling a hearing. It is clear to me that a trial judge's scheduling and requiring a case management conference is certainly more significant than the simple filing of a motion to disqualify. Thus, dismissal of the instant cause of action is error.
Additionally, there are multiple decisions from Florida district courts of appeal which allow actions to proceed when considerably less record activity has occurred than that which was involved in the instant case. In DeVane v. P.J. Constructors, Inc., 710 So.2d 1375 (Fla. 5th DCA 1998), the district court held that while the plaintiff had not taken any cognizable action since filing its complaint, the defendant's amended answer constituted record activity sufficient to defeat a motion to dismiss for failure to prosecute. See id. at 1377. Additionally, Florida courts consistently hold that the mere filing of a notice of hearing or deposition defeats a motion to dismiss for failure to prosecute. See, e.g., Miranda v. Volvo North America Corp., 763 So.2d 536, 537 (Fla. 3d DCA 2000); Garland v. City of Delray Beach, 685 So.2d 1392, 1394 (Fla. 4th DCA 1997); Escalona v. Kersten, 682 So.2d 223, 223 (Fla. 3d DCA 1996). Finally, district courts also commonly hold that the act of simply sending a letter to the trial judge is "sufficient record activity to avoid dismissal if ... placed in the court file." Smith v. Broward County, 654 So.2d 1297, 1298 (Fla. 4th DCA 1995); see also Cole v. Dep't of Corrections, 726 So.2d 854, 855-56 (Fla. 4th DCA 1999). I find these cases significant to the resolution of the issues before the Court in the instant cause, and I am persuaded that ordering a status conference is a more significant action than merely noticing a deposition or sending a letter. Therefore, Moossun's action should not be dismissed.
It is important in my mind to note that the framework of the Florida Rules of Civil Procedure make a case management conference, by its very nature, a significant event in the life of a legal action. At such a conference, the trial court may, among many other actions, limit, schedule, order, or expedite discovery; schedule or hear motions in limine; pursue the possibilities of settlement; and require the filing of preliminary stipulations if issues can be narrowed. See Fla. R. Civ. P. 1.200(a). Pursuant to rule 1.200(d), the pretrial order generated as a result of a case management conference "shall control the subsequent course of the action." Fla. R. Civ. P. 1.200(d). As noted in Samuels v. Palm Beach Motor Cars Ltd. By Simpson, Inc., 618 So.2d 310 (Fla. 4th DCA 1993), "the parties' attendance at a status conference *954 can significantly advance a cause toward resolution, for example, by narrowing issues to be tried or through exploration of settlement possibilities." Id. at 311; see also Miami Beach Awning Co. v. Heart of the City, Inc., 565 So.2d 739, 739 (Fla. 3d DCA 1990) ("[T]he court's order setting the cause for a status conference was, almost by definition, reasonably calculated to advance the cause toward resolution.") (emphasis supplied); Charyulu v. Mercy Hosp., Inc., 703 So.2d 1155, 1156 (Fla. 3d DCA 1997); Brown v. Meyers, 702 So.2d 646, 646 (Fla. 4th DCA 1997).
I fear the larger, and most important, issue here is the unacceptable continuing transition of the judiciary from a system of justice dedicated to the resolution of citizens' disputes and problems based on the merits to a system and process that is inexplicably focused upon docket management and the conclusion of litigation for the sake of conclusion. The chief concern of the courts should not be resolution for the sake of finality only, but it should be to render justice based upon the merits of the action in a timely, thoughtful manner. While trial courts certainly do have the inherent power to manage their dockets so as to move cases toward final judgment,[6] dismissal of cases just to reduce the overall number of pending actions before a court is not, I submit, a proper method of fulfilling the obligations that the judiciary owes every Floridian. The judicial system is charged by the Florida Constitution with properly adjudicating causes of action brought before it on the merits, and finding artificial ways to avoid this responsibility is simply wrong in my view. I fear that the Court's holding today simply furthers the cause of arbitrary efficiency at the expense of justice, and makes it possible for trial courts to ignore possibly meritorious cases. While we cannot speculate whether the present action is or is not meritorious in substance, that is not the issue. We must be concerned, however, with whether we are to become a system of docket control over substance. Therefore, I must dissent.
QUINCE, J., concurs.
NOTES
[1] The order provides:

ORDER SETTING CASE MANAGEMENT CONFERENCE
After a review of the file, the Court finds the DATE OF LAST RECORD ACTIVITY was: FEBRUARY 18, 1998
IT IS THEREFORE ADJUDGED as follows:
1. UPON RECEIPT OF THIS ORDER, Counsel and Pro Se parties, shall review the case and determine the status thereof. Plaintiff or it's [sic] Counsel shall deliver by hand or mail DIRECTLY TO THE UNDESIGNED JUDGE, no later than FIVE (5) DAYS prior to March 19, 1999, a written report of the status of this case, including but not limited to, motions pending, discovery taken and expected, estimated time to bring action to trial, and the necessary action recommended to be taken to move the case along or close it out. Such report may be in letter form and a copy shall be furnished to the opposing party.
2. THERE WILL BE A CASE MANAGEMENT HEARING ON March 19, 1999 at 8:30 A.M., in Courtroom 19-A, (19th floor) Orange County Courthouse, 425 N. Orange Avenue, Orlando, Florida, at which time the Court will review the written status report and determine what matters may aid in the disposition of the action. (No phone hearings)
3. PURSUANT TO RULE 1.200(c), FLORIDA RULES OF CIVIL PROCEDURE, ON FAILURE OF A PARTY TO ATTEND THIS CONFERENCE ON March 19, 1999, THE COURT MAY DISMISS THE ACTION, STRIKE THE PLEADINGS, LIMIT PROF [SIC] OR WITNESSES, OR TAKE ANY OTHER APPROPRIATE ACTION, WITHOUT FURTHER NOTICE.
DONE AND ORDERED at, Orlando, Orange County, Florida this January 26, 1999.
 _____________________
Walter Komanski, Circuit Judge
Id. (footnote omitted).
[2] The report asserted the following non-record activity:

A. Obtained Case file from Previous Counsel of Record containing over two thousand pages of loose material shipped to our office by an outside copying facility as arranged by the previous counsel which, as received, were in a state of disarray and disorder.
B. Devoted substantial time and effort to organize, review, and to make an in-depth study of materials provided by previous counsel to my office.
C. Obtained transcripts of Depositions of Plaintiff; Plaintiff's wife and daughter, who were deposed by the Defendants on September 23-24, 1997, which was not performed by the previous Counsel of Record.
D. Reviewed and had the deponents review their depositions containing about four hundred pages of testimony.
E. Prepared and furnished errata sheets and subscriptions for each deponent dated April 23, 1998, to the Reporting Company for use and benefit of the defendants. (Copies attached herewith a Appendix "A").
F. Ongoing necessary research and consultations with professionals of appropriate expertise related to the case.
G. On June 22, 1998, furnished releases from several medical providers as requested by Francis E. Pierce, III, Esquire, for use and benefit of the Defendant Richard P. Nathanson, M.D. (Copies attached herewith as Appendix "B").
Moossun v. Orlando Regional Health Care, 760 So.2d 193, 195 (Fla. 5th DCA 2000).
[3] See, e.g., Southeast Mortgage Co. v. Sinclair, 632 So.2d 677, 678 (Fla. 2d DCA 1994); Kohly v. Wallach, 580 So.2d 880, 881 (Fla. 3d DCA 1991).
[4] See Caldwell v. Mantei, 544 So.2d 252 (Fla. 2d DCA 1989); Norflor Construction Corp. v. City of Gainesville, 512 So.2d 266 (Fla. 1st DCA 1987).
[5] In addition to its decision in Miami Beach Awning, the Third District in Charyulu v. Mercy Hospital, Inc., 703 So.2d 1155, 1156 (Fla. 3d DCA 1997), held that a plaintiff's notice to convene a case management conference constituted sufficient record activity to preclude dismissal for failure to prosecute. Charyulu differs from Samuels and Miami Awning in that the case management conference in Charyulu was actually initiated by the plaintiff rather than by the court on its own motion. See id.
[6] Because there is absolutely no evidence in the record before this Court that the trial court below ordered the status conference as part of a "diligent ... annual call for a status report," majority op. at 951, the hypothetical "indefinitely pending case" does not exist in the instant action. Certainly, if the only record activity in the instant case was a yearly status conference and nothing else, dismissal for failure to prosecute could be proper. However, because that situation does not exist here, I see no need to hypothetically contemplate either of the parties' reasoning "taken to its extreme." Id.